United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 03-41476

(Summary Calendar)

_____

JERRY G. VILLARREAL,

Plaintiff - Appellant,

versus

THE MUNDY COMPANIES; JOHN T BLEDSOE; JERRY I MCNEIL; MUNDY CONTRACT
MAINTENANCE INC,

Defendants - Appellees.

Appeal from the United States District Court
For the Southern District of Texas
USDC No. G-97-CV-582

Before BARKSDALE, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Jerry G. Villarreal appeals the district court order granting summary judgment in favor of his

_____

[*]  Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

employer The Mundy Companies ("Mundy"), John Bledsoe, and Jerry McNeil. Villarreal alleged that certain of Mundy's employment actions violated Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and Texas state law, TEX. LAB. CODE § 451.001. We review a grant of summary judgment *de novo* applying the same standard as the district court. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). Summary judgment is appropriate where there are no issues of material fact and "the moving party is entitled to judgment as a matter of law." *Id.* For the reasons set forth below the district court properly granted summary judgment in this case.

Villarreal was hired as a welder in 1993. During the summer of 1995 he was promoted to foreman. Among the requirements of the foreman position was to be present at the job site, infrequently absent, and able to work when overtime was scheduled. In September, 1995, Villarreal injured his back in a work related accident. The following month Villarreal asked to see a doctor because of recurring pain. He was diagnosed with arthritis, prescribed medication, and released to work without restriction. In January, 1996, due to an increased amount of work, Mundy added a second shift of welders on the project where Villarreal worked, and named another welder as foreman of that shift. After returning to a single shift, Mundy only needed one foreman. It decided to retain the foreman of the second shift, not Villarreal, in that position.

On February 13, 1996 Mundy informed Villarreal that he was being reassigned to his former position as a welder. He did not complain to anyone at this time. Villarreal was frequently absent during February and March, 1996 due to back pain. In March, his doctor restricted the number of hours he could work per day. This limitation proved insufficient, and in the late Spring or early Summer of 1996 Villarreal's doctor restricted him to light duty work, limiting the amount of weight

he could lift. Mundy produced evidence to show that it complied with this new restriction. These restrictions were still inadequate and between May and August 1996 Villarreal missed thirteen full and nine partial work days other than vacation.

In August, 1996, the foreman resigned and Mundy promoted another welder to that position instead of Villarreal. Villarreal's absences because of his injury continued, and on December 16, 1996 his physician restricted him to sedentary work and further reduced the amount of weight he could lift. At this time Mundy placed Villarreal on a leave of absence. The next summer Villarreal applied for Social Security disability benefits, and the Social Security Administration eventually determined that he was totally disabled as of December, 1996. Villarreal concedes that he still is unable to work in any capacity. On May 17, 1997 Villarreal filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on July 11, 1997, and Villarreal filed the complaint in this case on October 8, 1997.

Villarreal's complaint alleged that Mundy's February, 1996 decision to demote him violated Title VII, the ADA, the ADEA, and Texas state law. He also claimed that Mundy's August, 1996 decision not to promote him violated Title VII, the ADA, and the ADEA. Finally, he claimed that Mundy's December 1996 decision to grant him a leave of absence violated the ADA.[1]

Villarreal was demoted in February, 1996, but he did not file a complaint with the EEOC until May, 1997. To the extent that Villarreal alleges that his demotion violated Title VII, the ADA, or the ADEA, the district court properly found these claims to be time barred. An employee must file

---

[1] The district court's order dismissed Villarreal's claim that he was harassed and humiliated. Villarreal does not raise this issue in his brief on appeal. This issue is waived. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993) (holding that arguments that are not argued in the body of a brief are waived).

a charge with the EEOC within, at most, 300 days of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117; 29 U.S.C. § 626(d); *see also Urrutia v. Valero Energy Corp.*, 841 F.2d 123, 124 (5th Cir. 1988) (Title VII); *Manning v. Chevron Chem. Co., LLP*, 332 F.3d 874, 878 (5th Cir. 2003) (ADA); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002) (ADEA). Villarreal waited for over a year before filing his EEOC claim, well outside the 300 day limitations period.

To the extent that Villarreal claims his demotion violates TEX. LAB. CODE § 451.001 this claim also fails. Section 451.001 prohibits an employer from discharging or discriminating against an employee for filing a worker's compensation claim, hiring an attorney to represent him in such a claim, instituting a proceeding under the Texas Worker's Compensation Act, or testifying in such a proceeding. *See Burfield v. Brown, Moore, & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir. 1995). To establish a violation Villarreal must show a causal connection between a protected activity and the retaliation. *Id*. at 589-90. Even assuming that Villarreal presented evidence to show that he engaged in a protected activity, he failed to present any evidence to demonstrate a causal connection with his demotion. The district court properly dismissed Villarreal's state law claim.

Villarreal claims that Mundy violated Title VII and the ADEA when it promoted another welder over him to the foreman position in August, 1996. Assuming that Villarreal successfully pleaded his *prima facie* case under Title VII and the ADEA, Mundy asserts that it did not promote Villarreal because of his frequent absences from work that prevented him from performing the duties of the foreman position. When an employer proffers a nondiscriminatory reason for their actions, any presumption of discrimination drops out of the case and the burden shifts back to the employee to show that the employment action was the result of a prohibited motivation. *Reeves v. Sanderson*

*Plumbing Prods.*, *Inc.*, 530 U.S. 133, 142-43 (2000). In addition to evidence establishing the *prima facie* case, other evidence tending to show an employer's proffered explanation is mere pretext can fulfill the plaintiff's burden of production. *Id*. at 143. In this case Villarreal presented no evidence to cast doubt upon Mundy's nondiscriminatory explanation for its actions. Villarreal failed to meet his burden of production described in *Reeves*. The district court properly dismissed Villarreal's Title VII and ADEA claims.

Villarreal also claims that Mundy violated the ADA when it failed to promote him in August, 1996. Again Villarreal presents no evidence to cast doubt upon the non-discriminatory reason proffered by Mundy for its actions. Instead Villarreal claimed that Mundy failed to adequately accommodate his injury thereby contributing to his numerous absences from work. Villarreal argues that this should prevent Mundy from relying upon its nondiscriminatory explanation for not promoting him. Even assuming this theory is correct, Villarreal presented no evidence to show that Mundy failed to reasonably accommodate him nor did he suggest any other reasonable accommodations that Mundy could have made. Thus, Villarreal failed to present any evidence to cast doubt upon Mundy's proffered non-discriminatory explanation for not promoting him, and failed to carry his burden of production under *Reeves*.

Finally, Villarreal claims that Mundy's decision to grant him a leave of absence in December 1996 violated the ADA. "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability') ) that is, a person 'who with or without reasonable accommodation, can perform the essential functions' of her job." *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (citing 42 U.S.C. § 12111(8)). In his application for disability benefits, Villarreal claimed that he was totally disabled as of December, 1996. The Social Security Administration

agreed, eventually finding that he was eligible for disability benefits from that time. Although this is not conclusive proof that Villarreal was not a qualified individual for purposes of the ADA as of December, 1996, he is required to provide a "sufficient explanation" to reconcile the apparent inconsistency between these two claims. *See Cleveland*, 526 U.S. at 805-06. Villarreal, however, presents no explanation to reconcile these positions. The district court properly dismissed Villarreal's ADA claim.

For the above reasons the district court's order granting summary judgment is AFFIRMED.